UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SOUTHWEST AIRLINES PILOTS ASSOCIATION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.:_____ |
| SOUTHWEST AIRLINES CO. | ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

Southwest Airlines Pilots Association ("SWAPA" or "the Union"), for its complaint against defendant Southwest Airlines Co. ("Southwest" or "Company"), states as follows:

1.    This is an action for injunctive relief, declaratory judgment and other appropriate relief, brought pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.* (hereinafter "RLA" or "the Act"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, against the defendant's change of the status quo consisting of contractual pilot rates of pay, rules, and working conditions, by its unilateral action in placing employees from the separate craft or class of flight instructors onto the Southwest Airlines pilot seniority list, while directing those employees to continue performing the duties exclusively within the flight instructor craft or class. Defendant has changed the status quo without complying either with the Section 6 procedures of the Railway Labor Act, 45 U.S.C. § 156, although the parties have

exchanged notices pursuant to Section 6 for proposed changes to the current pilot collective bargaining agreement, or with the parties' contractual procedure for implementation of a new classification in the Pilot craft or class.  Defendant has taken this unilateral action despite the efforts of plaintiff to resolve this dispute through negotiation and invocation of the mediation services of the National Mediation Board concerning this dispute.  The parties' negotiations reached impasse as a result of defendant's unilateral implementation of this change to the actual, objective working conditions applicable to Southwest Pilots.

## STATEMENT OF JURISDICTION

2. This action arises under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*, and the Court therefore has Federal Question jurisdiction pursuant to 28 U.S.C. § 1331, as well as jurisdiction under 28 U.S.C. § 1337, over this dispute concerning a contract made under federal law affecting interstate commerce.  This Court possesses jurisdiction to enforce the parties' obligations under the Railway Labor Act and to issue an order compelling the defendants to bargain in good faith; to rescind their unilateral changes to the "status quo," which consists of existing contractual rates of pay, rules, and working conditions covering their pilots; and to refrain from exercising self-help prior to exhaustion of the "major dispute" mechanisms of the Railway Labor Act for changing the status quo of pilot working conditions.

3. The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*, does not deprive this Court of jurisdiction over the Union's claim for injunctive relief because this action is

brought to enforce the mandatory procedures of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*

## VENUE AND PERSONAL JURISDICTION

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c), and this Court possesses personal jurisdiction over the defendant, wherein the defendant maintains its principal places of business, conducts scheduled flight operations, conducts training for pilots, and maintains a crew base for pilots affected by their unlawful actions which are the subjects of this complaint.

## PARTIES

5. The Southwest Airlines Pilots Association is an unincorporated labor organization with its headquarters at 1450 Empire Central Dr., Suite 737, Dallas, TX 75247.  SWAPA is the certified bargaining representative of the approximately 9,000 pilots employed by Defendant pursuant to certifications issued by the National Mediation Board in Case No. R-7403 issued on September 30, 2014.

6. Defendant Southwest Airlines Co. is an "air carrier" subject to the Federal Aviation Act of 1958, as amended, 49 U.S.C. §§ 40101 *et seq.*  It is also a "carrier" as that term is defined in Sections 201 and 202 of the RLA, 45 U.S.C. §§ 181, 182.  Southwest maintains its principal place of business, conducts training of pilots, and operates a pilot crew base in this judicial district.

## FACTS AND BACKGROUND

7. Southwest Airlines employs approximately 9,000 Pilots in the Pilot craft or class represented by SWAPA.

8. Southwest employs approximately 90 employees in the separate craft or class of Flight Instructor. Southwest's Flight Instructors are represented for collective bargaining by the Transport Workers Union and its Local Union No. 557.

9. The Flight Instructor craft or class exclusively performs full-time training instruction to Southwest Pilots.

10. Southwest Pilots do not perform full-time training instruction.

11. The Flight Instructor craft or class exclusively performs training instruction of Pilots in flight simulators.

12. Pilots do not perform training instruction in Flight Simulators.

13. Southwest and SWAPA are parties to a collective bargaining agreement with an effective duration of September 1, 2012 through August 31, 2020 (the "CBA").

14. The parties' agreement first became subject to change under the Railway Labor Act on March 31, 2020.

15. On November 1, 2019, SWAPA served on Southwest a notice of early reopener pursuant to Section 28 of CBA and Section 6 of the Railway Labor Act, 45 U.S.C. § 156 of intent to propose amendments to the parties' collective bargaining agreement.

16. Since January 9, 2020, Southwest and SWAPA have been engaged in direct negotiations pursuant to Section 6 for amendments to the parties' collective bargaining agreement.

17. On approximately October 14, 2021, Southwest notified SWAPA that it wished to now employ as pilots and place on the Pilot seniority list a number of

Southwest Flight Instructors,[1] while having those employees continue to exclusively perform duties as Flight Instructors.

18.     SWAPA notified Southwest that its proposed change would constitute creation of a new classification in the Pilot craft or class since no Pilot has exclusively performed duties as a Flight Instructor previously.

19.     Southwest and SWAPA engaged in negotiations in an effort to reach agreement on Southwest's proposed change.

20.     On approximately November 29, 2021, as Southwest and SWAPA were engaged in ongoing negotiations concerning Southwest's proposal to employ Flight Instructors as Pilots while continuing to exclusively perform duties as Flight Instructors, Southwest notified SWAPA that it had in fact implemented its proposal and changed the employment status of thirteen Flight Instructors to instead be identified as Pilots.

21.     Thirteen employees were directed by Southwest on approximately December 7, 2021 to attend the first day of Pilot ground school new hire indoctrination training.  Prior to the first day of training, one of the fourteen employees resigned from the Company.

22.     Ground school indoctrination training is an approximately six-week mandatory training course for new-hire Pilots under the Company's training program as approved by the Federal Aviation Administration.

---

[1]     The original list included fourteen Flight Instructors.  Two have since separated employment from Southwest.  As of the filing of this Complaint, there are twelve Flight Instructors remaining from the original fourteen.

23. On information and belief, after the thirteen employees attended the first of mandatory new-hire indoctrination training, the employees were directed by Southwest to return to performing full-time duties as Flight Instructors in flight simulator training of Pilots.

24. On information and belief, the thirteen employees have not attended any further mandatory new-hire indoctrination training as Pilots. Then on or about January 4, 2022, one of the thirteen resigned from the Company.

25. The currently remaining twelve employees are exclusively performing full-time Flight Instructor duties for Southwest.

26. Southwest has placed these twelve employees on the Pilot seniority list under the Southwest-SWAPA collective bargaining agreement.

27. On information and belief, Southwest has removed these twelve employees from the Flight Instructor seniority list under the Flight Instructor collective bargaining agreement.

28. The twelve employees are not qualified to perform any duties as Southwest Pilots since they have not undergone mandatory new-hire training, including completion of their initial operating experience training, and approval by a Southwest check airman that the employees be released from training to perform duties as Pilots.

29. The twelve employees are exclusively performing Flight Instructor duties based on their qualifications as Flight Instructors.

30. As a result of Southwest's unilateral implementation of its proposed change to place Flight Instructors in the Pilot craft or class to continue performing duties as Flight Instructors, the parties' negotiations over the issue reached impasse.

31. SWAPA sought the services of the National Mediation Board pursuant to Section 5 of the Railway Labor Act in an effort to resolve the parties' dispute over Southwest's proposed change and unilateral implementation of its proposed change to place Flight Instructors in the Pilot craft or class to continue performing duties as Flight Instructors.

32. SWAPA's application remains pending before the National Mediation Board.

33. The parties again met on December 21, 2021 concerning this dispute. Southwest restated its intent to unilaterally implement its proposed change. The parties therefore remain at impasse over the proposed change.

## CLAIM FOR RELIEF

### COUNT I
(Defendant's Violation of RLA Section 2, First and Section 6)

34. The allegations of paragraphs 1 through 33 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

35. The parties are in a dispute subject to Section 6 of the Railway Labor Act over changes to their collective bargaining agreement covering Southwest pilots, which is a "major dispute" in RLA parlance.

36. Section 2, First of the Railway Labor Act, 45 U.S.C. § 152, First, requires that carriers, including their officers, employees, and agents, "exert every reasonable effort to make and maintain agreements." This obligation is the "heart" of the Act.

37. Section 6 of the RLA (45 U.S.C. § 156) provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

38. Section 6 of the RLA requires air carriers which are parties to a major dispute over changes in collective bargaining agreements to maintain the "status quo," consisting of the actual, objective working conditions under which their employees perform services, at every stage of the major dispute process—from the inception of the dispute until thirty days after the date on which the National Mediation Board terminates its mediation services to the parties and "releases" the parties from mediation.

39. The parties are in direct negotiations pursuant to Section 6 of the Act over proposed changes to their collective bargaining agreement.

40. The parties have not exhausted the mandatory procedures of Sections 5 and 6 of the RLA.

41. By unilaterally implementing its proposed change to the actual objective working conditions covering Southwest Pilots in employing as Pilots and placing on the Pilot seniority list under the SWAPA collective bargaining agreement thirteen Flight Instructors who continue to exclusively perform duties as Flight Instructors, the defendant violated its obligations under Section 2, First and Section 6 to maintain the status quo during the RLA major dispute process until it has exhausted that major dispute process.

42. The defendant's actions are destructive of the collective bargaining process under Section 6 of the Railway Labor Act, 45 U.S.C. § 156, such that they violate the defendant's Section 2, First duty to make every reasonable effort to make and maintain agreements over rates of pay.

## COUNT II

(Defendant's violation of RLA Section 2, Seventh by its unilateral implementation of changes to the parties' collective bargaining agreement)

43. The allegations of paragraphs 1 through 42 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

44. Section 2, Seventh of the Railway Labor Act states, "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title." 45 U.S.C. § 152, Seventh.

45. Southwest has not implemented the proposed change at issue here in the manner prescribed by Section 6 of the RLA.

46. The parties' collective bargaining agreement in Section 1.M provides:

M. RE-OPENER

In the event that the Company, during the duration of this Agreement, should:

1. Acquire for its use any aircraft other than a 737 aircraft which can be flown under the same common 737 type rating; or

2. Establish any new classification of employees employed within the bargaining unit and not in existence on the date of this Agreement; or

3. Conduct flying limited to cargo only; or

4. Begin flying international routes, other than Near International routes; or

5. Create any subset of flying not specifically delineated in Section 5 of this Agreement; or

6. Acquire or configure any aircraft with more than one hundred seventy-five (175) passenger seats will trigger a re-opener on rates of pay.

This Agreement will be reopened for the sole purpose of negotiating wages, rates of pay, relocation expenses, bidding, and hours or conditions of employment particularly applicable to the specific situation. If the FAA, or the Company, or other competent authority restricts any flying beyond those aircraft listed above, this paragraph shall apply. If the reopener is triggered pursuant to paragraphs M.1 through M.6, the Company shall not place such aircraft in revenue service, or implement as applicable until the above provisions are negotiated and agreed to by the Association.

47. Section 1.M.2 was adopted by the parties in their 2016 negotiations for the current collective bargaining agreement to provide a mechanism for Southwest during the term of the Agreement to establish a new classification of employees.

48. Southwest's action of employing as Pilots Flight Instructors who continue to exclusively perform duties as Flight Instructors, constitutes a new classification of employees.

49. Southwest has not attempted to comply with Section 1.M of the Agreement to implement the proposed change at issue in this action.

50. Southwest's action has occurred after the August 31, 2020 term of the collective bargaining agreement stated in Section 28 of the CBA.

51. Even if Southwest invoked Section 1.M.2 of the Agreement, it is required by the clear language of that provision to not implement its proposed action until the terms covering the proposed change are negotiated and agreed to by SWAPA.

52. Southwest's unilateral action without complying with the procedures of Section 6 of the Act or a permitted process under the parties' agreement violates Section 2, Seventh of the RLA.

## IRREPARABLE INJURY

53. The allegations of paragraphs 1 through 52 are incorporated by reference pursuant to Fed. R. Civ. P. Rule 10(c).

54. The defendant's violations of its obligations under Sections 2, First and Seventh and Section 6 of the Railway Labor Act set forth in Counts I-II undermine the Act's statutory purpose to prevent disruptions to interstate commerce through bargaining in conference between the carriers and their employees, and are therefore contrary to the public interest.

55. In addition to the irreparable injury to the statutory purposes and machinery of the Act, the illegal and wrongful acts and conduct described under Counts I-II are continuing, and, if not enjoined, the plaintiff and the Pilots it represents will be injured in ways that cannot be measured accurately in terms of money, either as to extent or amount. As a proximate result of the defendant's unlawful practices:

    a. The bargaining process will be undermined and the parties effectively prevented from reaching agreement;

    b. The defendant's conduct is contrary to the public interest in stable labor relations and the maintenance of agreements, as well as their orderly change through the Act's procedures;

    c. Pilots will be deprived of contractual rights that are associated with the Company's hiring of new hire Pilots.

56. The injury being suffered by the public, the plaintiff, and the Pilots it represents is irreparable and continuing; it is such as cannot be recovered in an action at law or in administrative or contractual proceedings.

57. For all the foregoing reasons, the plaintiff is without an adequate remedy at law; plaintiff and the Pilots will suffer serious, substantial and irreparable injury unless defendant's unlawful conduct is enjoined. The public interest in the Railway Labor Act requires that injunctive relief issue.

58. The defendant will not be injured by granting of injunctive relief requiring them to comply with its duties under the RLA, since it can return the

employees in question to the Flight Instructor craft or class in order to obtain their services as Flight Instructors.  Alternatively, the Company can stop directing the employees in question to perform duties as Flight Instructors and instead place the employees in new-hire Pilot training as with all other new-hire Pilots to then perform duties as Pilots under the SWAPA agreement.

59. The defendant is required to address any operational or financial need for changes to existing agreements only through bargaining under the Railway Labor Act.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff requests the following relief:

a. Injunctive relief, preliminary and permanent, to enjoin and restrain the defendant, its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, to rescind its unilateral change to the actual, objective working conditions governing Southwest Pilots prior to exhausting the mandatory procedures of the Act by:

(1) Removing the Flight Instructor employees at issue from the Pilot craft or class and return the employees to the Flight Instructor craft or class if it wishes to obtain their services as Flight Instructors; or, alternatively,

(2) Cease directing the employees at issue to perform services as Flight Instructors and instead place those employees in new-hire pilot training in the same manner as all other new-hire Pilots and, upon those employees' satisfactory completion of new-hire training, place those employees into service as Pilots; and

    (3) Engage in negotiations with its Pilots in conformity with the carrier's obligations under the RLA, including Sections 2, First, Seventh, and 6 of the Act, to obtain changes to the actual, objective working conditions governing Pilots that permit it to employ Flight Instructors as Pilots while having those employees continue to perform duties as Flight Instructors.

    (4) Conspicuously post copies of the Court's injunctive order at each of the defendant's facilities and locations in the United States, which are regularly frequented by Pilots for a period of 90 days.

  b. Issue declaratory relief that Southwest may not alter the status quo of actual objective working conditions governing its Pilots to employ as Pilots Flight Instructors who continue to perform duties as Flight Instructors absent compliance with the requirements of Sections 2, First, Seventh and 6 of the Railway Labor Act.

  c. The plaintiff be awarded its costs.

  d. That the Court grant the plaintiff such other and further relief as may be equitable and just.

Dated: January 7, 2022.                Respectfully submitted,

/s/William R. Wilder
William R. Wilder
Texas Bar No. 00798583
1750 Tysons Blvd.
Suite 1500
Tysons, VA 22102
(703) 712-4772
wwilder@wilderlg.com

and

*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr.
Texas Bar No. 00796738
jeff.hellberg@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
p. 214-692-6200
f. 214-692-6255

and

K. Helen Yu
hyu@swapa.org
Texas State Bar No. 24071565
Southwest Airlines Pilots Association
1450 Empire Central Drive, Suite 737
Dallas, TX 75247
Phone: (214) 722-4256
Fax (214) 351-2504

Linelle S. Mogado
lmogado@swapa.org
California Bar No. 236489
Southwest Airlines Pilots Association
1450 Empire Central Drive, Suite 737
Dallas, TX 75247
Phone: (214) 722-4287
Fax (214) 351-2504

Counsel for Southwest Airlines Pilots Association